UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAMAN KUMAR,

                              Plaintiff,                    10 Civ. 3559 (PKC) (FM)

       -against-

                                                     MEMORANDUM
                                                     AND ORDER
NEW YORK CITY SCHOOL CONSTRUCTION
AUTHORITY, NEW YORK CITY
DEPARTMENT OF EDUCATION, NARENDA
PATEL, individually, and SASSAN TOUSSI,

                              Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Raman Kumar, a former employee of the New York City Construction Authority (the "SCA"), brings claims of employment discrimination and hostile work environment on the basis of national origin and age under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended by the Civil Rights Act of 1991, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), et seq.  He does not bring any claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a).  Additionally, Kumar alleges a violation of his due process rights under the Fifth and Fourteenth Amendments and seeks relief under 42 U.S.C. § 1983.  He also asserts a state common-law claim for intentional infliction of emotional distress.  Kumar also claims that his employment was terminated without adequate pre-termination procedures.

        Plaintiff's Title VII claims of discrimination and hostile work environment based on national origin, but not age, are asserted against the SCA and the New York City Department

of Education (the "DOE").[1] The section 1983 due process claims are asserted against the SCA and the DOE. The claim of intentional infliction of emotional distress is asserted against the SCA and the DOE. The state law claims of age and national origin discrimination and hostile work environment are brough under the NYSHRL and NYCHRL against the SCA, the DOE, Narendra Patel and Sassan Toussi.

The action was removed from Supreme Court, New York County on April 29, 2010 and an Amended Complaint ("Complaint") was filed on May 24, 2009. (Pl. 56.1 ¶ 51.) The defendants now move for summary judgment pursuant to Rule 56, Fed. R. Civ. P. For the reasons discussed below, defendants' motion for summary judgment is granted in part and denied in part.

BACKGROUND

Kumar is sixty-three years old and of eastern Indian descent; he was employed by the SCA from September 16, 2007 to March 17, 2009 as a "Civil Service Engineer B." (Compl. ¶¶ 7, 22-23, 53, 57.) Kumar has held a New York State Professional Engineer's license since in or about July 1999. (Id. ¶ 18.) Prior to his employment by the SCA, Kumar was employed by the New York City Department of Design and Construction as an Associate Project manager and later at the New York City Housing Authority as a "Civil Service Engineer II." (Id. ¶¶ 20-21.) Kumar was hired by the SCA for a one-year probationary employment period, during which the SCA would determine whether to continue him as a permanent employee. (Barrett Decl. Ex. H.) The SCA informed Kumar by letter dated September 22, 2008 that his probationary period

---

[1] The DOE is part of the Board of Education of the City School District of the City of New York. See Matson v. Board of Educ. Of City Sch. Dist. of New York, 631 F. 3d 57, 76 (2d Cir. 2011).

would be extended by six months to March 17, 2009. (Id. ¶ 57.)  The SCA terminated Kumar's employment at the end of this extension.  (Id. ¶ 53.)  During his employment at the SCA, Kumar was the only employee of eastern Indian descent in his unit.  (Id. ¶ 23.)

The Complaint alleges that Toussi and Patel created a hostile work environment and subjected Kumar to disparate treatment based on his age and national origin.  (Id. ¶¶ 24, 26)  At all relevant times, Toussi was Patel's direct supervisor and Patel was Kumar's direct supervisor.  (Id. ¶¶ 14-16.)  Toussi is approximately forty-eight years old and was born in Iran.  (Toussi Dep. 9:2-12).  Patel is fifty-two years old and was born in the western Indian region of Gujarat.  (Patel Dep. 8:8-21.)

Kumar alleges that Toussi negatively referred to Kumar's age on "at least a weekly basis."  (Id. ¶ 28.)  Specifically, Toussi told Kumar that he walked like a person without energy, did not fit into the department and was too old and slow to keep up with the pace of younger designers.  (Id. ¶¶ 27-28.)  Toussi repeatedly asked Kumar to retire and instructed another employee to encourage Kumar to leave the department. (Id. ¶¶ 27-28, 30-31, 37-38).  Patel also expressed to Kumar his "anxiousness" for Kumar to retire.  (Id. ¶ 35.)  Toussi removed Kumar from a project on which he had completed about 75% of the work and then attributed the designs to Patel. (Id. ¶ 29.)  Starting in late 2007, Kumar complained that he was given less work and less desirable work than younger, similarly-situated employees.  (Id. ¶¶ 33-34, 45, 48.)  In December 2008, Patel asked Kumar to stop working on another project and turn over his designs to another engineer who was of western Indian descent. (Id. ¶ 49; Kumar Dep. 139:20-140:2.)

In Kumar's January 2008 performance evaluation covering his first three months of work at the SCA, Toussi gave Kumar an overall rating of "needs improvement." (Id. ¶ 32.)  Toussi administered the evaluation without Patel's review or signature, even though it is

allegedly the SCA's policy and practice to have an employee's direct supervisor administer the evaluation. (Id. ¶ 32.) Kumar wrote a rebuttal to this evaluation but did not receive a formal response. (Id. ¶ 43.) Toussi allegedly implied that the rebuttal was a mistake saying, "You have challenged SCA, we will see you." (Id. ¶ 44.) In February 2008, Kumar was informed that his next performance review would be similar to his last. (Id. ¶¶ 45.) In June 2008, Patel gave Kumar an overall performance rating of "needs improvement" for the period of December 17, 2007 through March 17, 2008, even though he had completed all of his project work. (Id. ¶ 47.)

In November 2008, Kumar received an overall performance rating of "needs improvement" for the period of March 17, 2008 through June 17, 2008. (Id. ¶ 59.) The evaluation was written by Patel but was not reviewed by Toussi as is allegedly required by the SCA's rules. (Id. ¶ 59.) Kumar made a formal complaint to Louise Nicolazzi-Shapiro, the Senior Director of Human Resources and Organizational Development, about the unfairness of his evaluations in December 2008. (Id. ¶ 50.) In February 2009, Kumar was congratulated by the Vice President of the SCA for completing 100% of his projects "in December 2008," a distinction that eleven out of twenty employees received. (Id. ¶ 52.) Finally, in his termination letter dated March 17, 2009, Kumar was told that his overall performance rating in a recent evaluation was "unsatisfactory," but he never received a copy of that evaluation. (Id. ¶ 54.)

Kumar also argues that he became a permanent employee on September 16, 2008, the end of a one-year period of service. He further asserts that as a permanent employee his employment could not be terminated without affording him certain due process rights, most notably, a pre-termination hearing. (Id. ¶¶ 56-57, 61-62.) The SCA argues that Kumar never became a permanent employee because his first year of probationary employment was extended by ten days because of absences from employment, and therefore a September 22, 2008 notice of

a further extension of his probationary period was proper and effective.  (Nicolazzi-Shapiro Dep. 34:3-34:17, 37:5-25 )

Kumar filed his first complaint with the Equal Employment and Opportunities Commission ("EEOC") alleging age discrimination on April 8, 2009.  (Barrettt Decl. Ex. U)  He filed a second EEOC complaint alleging national origin discrimination on January 4, 2010.  (Barrettt Decl. Ex. X)

Plaintiff seeks reinstatement, back pay, front pay, general and special damages for lost compensation and job benefits, damages for emotional distress, reasonable attorneys' fees and expenses, interest, punitive damages, and a judgment declaring the practices and policies set forth in the Complaint to be unlawful under Title VII, the NYSHRL, and the NYCHRL.  (Compl. ¶¶ 109-116.)  The Complaint seeks preliminary and permanent injunctions to prevent the defendants from engaging in those practices.  (Id. ¶ 108.)

DISCUSSION

    I.    Summary Judgment Standard

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56, Fed. R. Civ. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, sufficient to demonstrate that he or she is entitled to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward

with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, granting summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–88 (1986). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted); see also Anderson, 477 U.S. at 249–50 (summary judgment may be granted if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (quotation marks omitted).

Local Civil Rule 56.1 of this District requires a summary judgment movant to submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civil Rule 56.1(a). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civil Rule 56.1(d). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c), Fed. R. Civ. P. "'Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'" Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

II.   Proper Parties

The DOE and Patel both argue that they are not proper parties to this action and should therefore be dismissed. Patel argues that the Court does not have personal jurisdiction over him because he was never served with the summons and complaint and the time to do so has expired. However, an affidavit of service establishes that Patel was served with Kumar's original state court Complaint on April 29, 2010, the day the case was removed to federal court. (Rosenberg Decl. Ex. H,) Danielle Barrettt, Patel's attorney, was also served with the Amended Complaint on May 24, 2011 as is permitted by Rule 5(b)(1), Fed. R. Civ. P. (Rosenberg Decl.

Ex. H; Pl. 56.1 ¶¶ 49, 52) Patel has not submitted an affidavit or any other material of an evidentiary nature to support the claim that he was not served. The assertion in the original affidavit of service and the Rosenberg declaration submitted by the plaintiff remain uncontested. There is no basis to dismiss claims against Patel for improper or untimely service.

The DOE argues that it is not a proper party because it is a legal entity separate from the SCA, does not control SCA policy and was not Kumar's employer.[2] (Smarr Dep. 13:3-4, 66:3-8.) Kumar argues that the DOE was responsible for overseeing the actions that deprived him of his constitutional rights because the head of the DOE serves on the three-member board of the SCA. (Smarr Dep. 12:23-13:2.) The Special Assistant and Executive Director of the DOE, Jamie Smarr, is also required to attend the SCA's trustee meetings. (Smarr Dep. 17:11-14.) On the record on this motion, there is a genuine issue of material fact as to whether the DOE was Kumar's employer. Summary judgment in favor of the DOE is denied.

    III.    <u>Plaintiff's Due Process Claims under section 1983</u>

The procedural due process claim will be analyzed first in order to determine whether Kumar was a permanent employee at the time of his termination. To state a cognizable section 1983 claim, a plaintiff must allege that a defendant acting under the color of state law deprived him of a right protected by the Constitution or a federal statute. <u>Paratt v. Taylor</u>, 451 U.S. 527, 535 (1981). To impose liability on a municipality, a plaintiff must prove: (1) the deprivation of a federal right by someone acting under the color of state law; (2) that the person acted pursuant to an official policy, custom or practice of the municipal defendant; and (3) that

---

[2] The DOE has not argued that it is not a suable entity. It appears that the DOE is not a department of New York City and is suable because the Board of Education of the City School District of the City of New York historically has been suable. <u>See</u> <u>Matson v. Board of Educ. Of City Sch. Dist. of New York</u>, 631 F. 3d at 77-78 n.8.

the plaintiff was injured as a result of that conduct.  Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 690-95 (1978).

Kumar claims that his Fifth and Fourteenth Amendment due process rights were violated because he had a property interest in his permanent employment at the SCA and was terminated without adequate pre-deprivation procedures.  Property interests protected by the due process clause "may take many forms" and include the interests "a person has already acquired in specific benefits."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972) ("Roth").  To have a property interest in a benefit, a person must "have a legitimate claim of entitlement to [the benefit]."  Id. at 577.   A person's property interest in continued employment may be "created and defined by the terms of his appointment," and the Supreme Court has held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to termination.  Roth, 408 U.S. at 577; Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Kumar argues that as a permanent employee, the March 17, 2009 same-day notification and termination of his employment violated his due process rights because it did not provide him with adequate pre-termination notice and hearing.  New York State Civil Service Law § 75 provides that permanent employees may not be removed except for incompetency or misconduct established after notice and an opportunity to be heard at a due process-type hearing.  N.Y. Civ. Serv. L. § 75.

Kumar asserts that he became a permanent employee under the SCA Rules for the Classified Civil Service on September 16, 2008 because he had completed one year of employment at that time without notice that his probationary term had been extended.  In

9

relevant part, Rule XV states:

> Except as herein otherwise provided, every appointment . . . shall be for a probationary term of not less than three weeks, nor more than one year. . . .  An appointment shall become permanent upon the completion of the period of probation unless the probationer, prior to the completion of such service, is given written notice that the probationary term will be continued.

(Barrettt Decl. Ex. G, at 15 )  However, Rule XV further states:

> The probationary term of any employee may, in the discretion of the appointing authority, be extended by the number of work days of absence which, pursuant to this section, are not considered as time served in the probationary term.  Any periods of authorized or unauthorized absence during the probationary term, may, in the discretion of the appointing authority, be counted as time served in the probationary term.

 (Id. at 16)  The defendants argue that Kumar never became a permanent employee because his probationary term was optionally extended by the number of days of his absences during the first fifty-two weeks of his employment.  Defendants further argue that they maintained the right to extend his probationary period for up to six months and did so on September 22, 2008 before the probationary term, extended by Kumar's absences, expired.

The defendants have furnished no evidence of how Rule XV is interpreted nor provided a precise calculation of Kumar's absences.  Notably, the letter purporting to extend Kumar's probationary term by six months calculates the six month period from September 16, 2008, the completion of one year measured from the start date, not some later date that takes into account absences.  Moreover, the defendants have not tendered any evidence that September 22, 2008, the date of the purported extension letter, coincides with any particular number of absences by Kumar.  A reasonable fact-finder could conclude that Kumar became a permanent employee at the close of business on September 16, 2008, the completion of one year.  Defendants' motion for summary judgment on the section 1983 claim is denied.

IV.     Plaintiff's Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  To succeed on a Title VII claim, a plaintiff must show that he suffered discrimination on the basis of protected status that resulted in an "adverse employment action."  See Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).  To qualify as "adverse," an action must "cause a 'materially adverse change in the terms and conditions of employment,' and not just 'mere inconvenience.'"  Id. (quoting Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  Moreover, a plaintiff is required to set forth factual circumstances from which discriminatory motivation for such action can be inferred.  Patane, 508 F.3d at 112.

A defendant also may be liable under Title VII for creating a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).[3]  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  Id.; accord Thomas v. iStar Financial, Inc., 629 F.3d 276, 281 (2d Cir. 2010) (no reasonable jury

---

[3] The Complaint alleges that plaintiff was subject to "harassment." (Compl. at 12-16.)  These allegations are properly viewed through the lens of the jurisprudence governing a claim of hostile work environment. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (internal quotations marks and brackets omitted); see also National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 115 (2002) (a hostile work environment is created "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own").

could find a hostile environment based on "occasional and isolated" events). The conduct must be both objectively hostile and subjectively perceived as such by a plaintiff. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). However, a single episode may suffice to create a hostile environment "if, by itself, it can and does work a transformation of the plaintiff's workplace." Id. at 374. For instance, physical threats may render isolated incidents actionable. Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010).

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), the plaintiff first has the burden of establishing by a preponderance of the evidence a prima facie case of discrimination. To establish a prima facie case, a plaintiff must show (1) membership in a protected class, (2) qualification for the position, and (3) an adverse employment action arising under circumstances that (4) raise an inference of discrimination. Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009). The plaintiff's burden in establishing a prima facie case is "minimal" and "de minimis." Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Finally, the plaintiff must then prove by a preponderance of the evidence that the reasons proffered by the defendant were merely pre-textual. Id.

Kumar alleges that he was discriminated against and subjected to a hostile work environment on the basis of his national origin when he received poor performance evaluations and was terminated from his position at the SCA. (Compl. ¶ 80.) Accepting the facts set forth by the plaintiff as true and drawing every reasonable inference in his favor, Kumar has not established a prima facie case of discrimination or hostile work environment on the basis of national origin. The record does not allege any actions or incidents from which a reasonable jury

could conclude that Kumar suffered discrimination or a hostile work environment as the result of his national origin. There is no evidence that the defendants ever commented on Kumar's place of origin and Kumar describes his relationships with Toussi and Patel at work as "not very good and not very bad" and "very good," respectively. (Kumar Dep. 168:14-22, 171:4-18.)

Kumar did not receive a single positive review during his employment at the SCA. Toussi and Patel were the only supervisors to review Kumar's performance, and he urges that these negative evaluations were motivated by discriminatory animus. But Toussi is Iranian and took part in the decision to hire Kumar. It is not reasonable to infer national origin discrimination from the uniformly negative reviews of a supervisor who hired Kumar and never commented on his place of origin. The fact that Kumar on one occasion was asked to stop working on a project and turn over his designs to an engineer of western Indian descent and on another was removed from a project on which he had completed 75% of the work which was then attributed to Patel, who is also of western Indian descent—without more—is insufficient to make out a prime facie case. Kumar's national origin claims are little more than conclusory allegations of discrimination and hostile work environment. For these reasons, the defendants' motion for summary judgment is granted as to the Title VII claims.

V.    Plaintiff's NYSHRL and NYCHRL Claims

Claims under the NYSHRL are construed pursuant to the same standards as its federal counterparts, including Title VII. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295 (2004) (relying on federal Title VII precedent to construe the NYSHRL). When a court is presented with an issue of statutory construction, the NYCHRL is to be construed more liberally than the federal standards and the NYSHRL. See Williams v. New York City Housing Auth., 61 A.D.3d 62, 66-67 (1st

13

Dep't 2009). Kumar alleges that he was discriminated against and harassed both on the basis of his national origin and his age in violation of the NYSHRL and the NYCHRL.

    A.  National Origin

The analysis of Kumar's national origin claims under the NYSHRL and the NYCHRL is the same as the analysis under Title VII. There is insufficient evidence to permit a reasonable jury to conclude that Kumar suffered discrimination or a hostile work environment based on his national origin. For the reasons described above, the defendants' motion for summary judgment is granted as to the NYSHRL and NYCHRL national origin discrimination and hostile work environment claims.

    B.  Age

Plaintiff brings no claim of discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a). His age claims are brought exclusively under the NYSHRL and the NYCHRL. Accepting the facts set forth by the plaintiff as true and drawing every reasonable inference in his favor, Kumar has established a prima facie, case of age discrimination and hostile work environment under the de minimis standard of McDonnell Douglas, which applies to the NYSHRL and NYCHRL claims. See Weinstock, 224 F.3d 33, 42 n.1 (2d Cir. 2000). Kumar's supervisors negatively commented on his age on "at least a weekly" basis and frequently pressured him to retire. (Compl. ¶¶ 27-28, 30-31, 35, 37-38.) At least some of these comments suggested that Kumar was unfit for his position because of his age. (Id. ¶¶ 27-28) A reasonable jury could conclude that weekly negative comments about Kumar's age were expressions of discriminatory animus and created a hostile work environment. (Kumar Dep. 168:14-22, 171:4-18.)

The defendants argue that, even if a prima facie case is established, Kumar's poor performance was a legitimate, nondiscriminatory basis for its actions. If Kumar were a probationary employee at the time of his termination, the defendants would have carried their burden under McDonnell Douglass. But if Kumar were a permanent employee at the time of his termination, it is not obvious that his performance was sufficiently poor under New York State Civil Service Law § 75 to constitute a legitimate, nondiscriminatory basis for his termination since section 75 requires a finding of incompetency or misconduct. N.Y. Civ. Serv. L. § 75.

An employer's motivation, rather than the truth or falsity of the underlying reason for termination, is controlling. See McPherson v. N.Y. City Dept. of Educ., 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer . . . .'" (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983))) (emphasis in original); Koleskinow v. Hudson Valley Hosp. Ctr., 622 F.Supp.2d 98, 111 (S.D.N.Y.2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] ..., but whether the employer made a good-faith business determination.'" (quoting Baur v. Rosenberg, Minc, Falkoff & Wolff, No. 07 Civ. 8835(GEL), 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))). At trial, the defendants may be able to successfully defend the age claims on the basis that they had a reasonable and honest belief that Kumar was a probationary employee and had a good-faith legitimate, non-discriminatory reason to terminate him as a probationary employee. The issue has not been adequately presented on this motion for this Court to decide the issue in the summary judgment context. Accordingly, this Court denies summary judgment on the issues of whether there was a legitimate non-discriminatory basis for the termination of Kumar.

The DOE also argues that the State and City claims against it should be dismissed because Kumar failed to file a notice of claim as required by N.Y. Educ. L. § 3813. Kumar appears to admit not having filed a notice of claim but cites a number of cases that have permitted other documents to satisfy the section 3813 requirement. See Mennella v. Uniondale Union Free Sch. Dist., 287 A.D.2d 636 (2d Dep't 2001); Bucalo v. East Hampton Union Free Sch. Dist., 351 F.Supp.2d 33 (E.D.N.Y. 2005); Kushner v. Valenti, 285 F.Supp.2d 314 (E.D.N.Y. 2003). An EEOC filing can substitute for a notice of claim under some circumstances, but neither party has provided sufficient information from which this Court could conclusively determine whether Kumar's filings satisfy the section 3813 requirement. See Brtalik v. S. Huntington Union Free School Dist., No. 10 Civ. 0010, 2010 WL 3958430, at *13 (E.D.N.Y. Oct. 6, 2010); Bucalo, 351 F.Supp.2d 33 (E.D.N.Y. 2005).

Because there are genuine issues of material fact as to whether the SCA had a legitimate non-discriminatory basis for its actions, whether Toussi and Patel's negative commentary was sufficiently severe, and whether Kumar's EEOC filings satisfy section 3813, the defendants' motion for summary judgment on both the NYSHRL and NYCHRL age discrimination and hostile work environment claims is denied.

VI. Plaintiff's Intentional Infliction of Emotional Distress Claim

In order to state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. See Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993)). Kumar fails to show any extreme or outrageous conduct by the

16

defendants or that he has suffered any severe emotional distress. Accepting the allegations of Toussi and Patel's negative commentary on Kumar's age as true, none of the comments were sufficiently outrageous or shocking to give rise to a claim of intentional infliction of emotional distress. (Compl. ¶¶ 27-28, 30-31, 35, 37-38.) Accordingly, the motion for summary judgment dismissing this claim is granted.

CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (Docket # 18) is GRANTED as to plaintiff's claims under Title VII and state law claims for discrimination and hostile work environment based upon national origin. Summary judgment is also GRANTED as to plaintiff's claim for intentional infliction of emotional distress. Summary judgment is DENIED as to plaintiff's other claims.

All Final Pre-trial Submissions, consisting of a joint pre-trial order, requests to charge, voir dire requests, and fully briefed in limine motions are due January 20, 2012. The Final Pre-trial Conference is set for February 3, 2012 at 2:45 p.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 28, 2011